OPINION
 JUDGMENT ENTRY
{¶ 1} This is an appeal from rulings of the Canton Municipal Court.
 STATEMENT OF THE FACTS AND CASE
{¶ 2} The facts in this appeal indicate that Appellant was a teacher at Glen Oak High School where Holly Adkins was a student and a student aide for Appellant. She alleged that Appellant began making sexual comments which progressed to sexual touching and other acts.
{¶ 3} Appellant was charged with sexual imposition on January 9, 2003. However, on the State's motion, the charges were dismissed on February 18, 2003.
{¶ 4} The following June 16, 2003, the charge of sexual imposition was again filed along with a charge of endangering children.
{¶ 5} Certain discovery motions of Appellant were filed on July 1, 2003 and on July 23, 2003.
{¶ 6} Appellant, on July 25, 2003, moved to dismiss the charges. Such motion was denied.
{¶ 7} The case proceeded to trial on July 30-31, 2003, with the jury finding Appellant not guilty of sexual imposition, but guilty of endangering children. He was subsequently sentenced.
{¶ 8} Eight Assignments of Error are raised:
 ASSIGNMENT OF ERROR
{¶ 9} "I) The trial court erroneously denied appellant's motion for dismissal because the state failed to bring appellant to trial within the period of time set forth in R.C. 2945.73(B).
{¶ 10} "II) The trial court erroneously admitted testimony of `other acts' because it was irrelevant; the probative value was outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury and the state's evidence failed to meet the tests for exceptions for admission of evidence of other acts.
{¶ 11} "III) The trial court erroneously denied appellant the opportunity for testimony from two witnesses who had already been interviewed by the state.
{¶ 12} "IV) The trial court erroneously denied appellant's motion for an order that the state's taped interviews of joe putnam and vince dolov be made part of the record for review upon appeal for compliance with discovery rules requiring the state to provide all evidence favorable to appellant, material to guilt or punishment.
{¶ 13} "V) The trial court erroneously restricted cross examination of witnesses about matters directly related to their credibility and the credibility of other witnesses.
{¶ 14} "VI) The trial court erroneously permitted hearsay testimony without any foundation to qualify it as corroborating evidence.
{¶ 15} "VII) The trial court erroneously permitted testimony about accuser's character for truthfulness.
{¶ 16} "VIII) Appellant's conviction of endangering children is against the manifest weight of the evidence."
 I.
{¶ 17} The First Assignment raises the issue as to whether the time limitation of R.C. 2945.73(B) was exceeded.
{¶ 18} Such statute provides:
{¶ 19} "(B) Upon motion made at or prior to the commencement of trial, a person charged with an offense shall be discharged if he is not brought to trial within the time required by sections2945.71 and 2945.72 of the Revised Code."
{¶ 20} The referenced code sections state:
{¶ 21} R.C. 2945.71(B)(2) states:
{¶ 22} "Within ninety days after the person's arrest or the service of summons, if the offense charged is a misdemeanor of the first or second degree, or other misdemeanor for which the maximum penalty is imprisonment for more than sixty days."
{¶ 23} R.C. 2945.71(D) states:
{¶ 24} "A person against whom one or more charges of different degrees, whether felonies, misdemeanors, or combinations of felonies and misdemeanors, all of which arose out of the same act or transaction, are pending shall be brought to trial on all of the charges within the time period required for the highest degree of offense charged, as determined under divisions (A), (B), and (C) of this section."
{¶ 25} As shown by the record, Appellant was charged with sexual imposition, a third degree misdemeanor and endangering children, one of the first degree.
{¶ 26} Appellant was tried within the ninety-day provisions of R.C. 2945.71(B)(2), even accounting for the forty-three days elapsed from the first filing.
{¶ 27} We therefore determine that such statutes were followed and reject the First Assignment of Error.
 II.
{¶ 28} The Second Assignment questions the admissibility of "other acts" testimony.
{¶ 29} The admissibility of other acts evidence is carefully limited because of the substantial danger that the jury will convict the defendant solely because it assumes that the defendant has a propensity to commit criminal acts, or deserves punishment regardless of whether he committed the crime charged in the indictment. See State v. Curry (1975), 43 Ohio St.2d 66,68, 72 O.O.2d 37, 38, 330 N.E.2d 720, 723. This danger is particularly high when the other acts are very similar to the charged offense, or of an inflammatory nature.
{¶ 30} Revised Code 2945.59 provides for the admissibility of "other acts" as follows:
{¶ 31} "In any criminal case in which the defendant's motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing an act is material, any acts of the defendant which tend to show his motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing the act in question may be proved, whether they are contemporaneous with or prior or subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another crime by the defendant."
{¶ 32} Evid.R. 404(B) also is pertinent:
{¶ 33} "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."
{¶ 34} The admission or exclusion of relevant evidence rests within the sound discretion of the trial court. State v. Sage
(1987), 31 Ohio St.3d 173. Therefore, we will not disturb a trial court's evidentiary ruling unless we find said ruling to be an abuse of discretion.
{¶ 35} In order to find an abuse of discretion, we must determine that the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217. We must look at the totality of the circumstances in the case sub judice and determine whether the trial court acted unreasonably, arbitrarily or unconscionably.
{¶ 36} Appellant challenges the court's admission of testimony by Holly Adkins and several other witnesses as improper "other acts" evidence.
{¶ 37} We find that such Assignment is not well taken in that the testimony relates to Appellant's motive, intent, scheme, plan or system.
{¶ 38} For example, Appellant objects to statements made to Ms. Adkins because they were not relevant to the accusation of touching and unrelated in time or space.
{¶ 39} As Appellant was found guilty only of the charge of endangering children, we are not concerned with actual touching.
{¶ 40} R.C. 2919.22(A) in part states:
{¶ 41} "No person, who is the parent, guardian, custodian, person having custody or control, or person in loco parentis of a child under eighteen years of age or a mentally or physically handicapped child under twenty-one years of age, shall create a substantial risk to the health or safety of the child, by violating a duty of care, protection, or support. It is not a violation of a duty of care, protection, or support under this division when the parent, guardian, custodian, or person having custody or control of a child treats the physical or mental illness or defect of the child by spiritual means through prayer alone, in accordance with the tenets of a recognized religious body."
{¶ 42} The evidence indicated that Appellant, as a teacher, was in the position of loco parentis to Ms. Adkins and that the result of his conduct was that she required extensive counseling.
{¶ 43} R.C. 2945.59 also specifically states "whether they are contemporaneous with or prior or subsequent thereto etc.". Therefore, the assertion as to the conversations being unrelated in time or space is not at all applicable.
{¶ 44} Appellant then objects to statements by Ericka Sapp as to Appellant inquiring as to her "dating life" and coming to her placement of employment. These facts tend to support a pattern of inappropriate inquiry and pattern of conduct with other teenage girls such as that with Ms. Adkins. The fact that Appellant's actions were not criminal, as stated, is inconsequential as the pattern of conduct permits introduction, not the severity of each act or conversation in themselves.
{¶ 45} Objections are next raised that a foundation was not laid before questions were asked as to conversations, inappropriate and otherwise with Appellant, such as those asked of Erica Sapp and Brittany Stenger.
{¶ 46} While the inquiry may have been more artfully phrased, it is difficult to find the necessity of a foundation when questioning as to conversations. We find such objection not well taken and not an abuse of discretion.
{¶ 47} Keeping in mind that Appellant was a teacher at the high school where each of the testifying students attended, there are a number of instances of conversations which could indicate motive, intent, scheme or plan such as:
{¶ 48} While objections were not raised as to each of the questions, these and those conversations to which objections were raised clearly fall into the allowable area. Examples of inappropriate or pattern of conduct for a teacher to students were the following inquiries:
{¶ 49} "Yes. Ah, he asked me how many men, girls, guys I had slept with and if I have ever dated older men." (T. at 87).
{¶ 50} "He asked me to come over to his house one day, he was going hunting in the morning and he said that his wife would not be home, and he gave me directions to his home." (Id.).
{¶ 51} "Ahhm, I believe that was the time that he told me that he had a cool friend that he wanted to hook me up with. (Id.).
{¶ 52} "He wrote a note on my test. I don't remember exactly what it said, but it was two lines of his friend and my dating, — to that nature, but he wrote a note on my test while I was taking my test and asked me a question." (T. at 88).
{¶ 53} "It was a question, a yes or no question, I think that might have been the time that he asked me if my boyfriend and I had broken up." (T. at 89).
{¶ 54} "Ahhm, something along the lines of how old was the — how old was the oldest age of the guy my parents would allow me to date." (T. at 92).
{¶ 55} "Ahhm, he would just be joking about how I shouldn't date younger guys, how I should probably go for older guys and that older guys would probably be best for me." (T. at 121).
{¶ 56} "Yes. Sometimes he would say like that he likes the way that my perfume smelled, or he would just give me compliments and I didn't think anything of it, until —". (T. at 152).
{¶ 57} "Like he would say, oh I like that shirt on you today, or those pants look nice, and I would just ignore, I didn't want to make a big deal about it." (T. at 153).
{¶ 58} We fail to find that the admission of such testimony mislead or confused the jury even though it did not agree on the charge of sexual imposition. The jury was free to accept or reject the testimony relative to the required elements of the latter charge, such as unbuttoning Ms. Adkins pants and inserting his hands.
 III.
{¶ 59} The Third Assignment asserts the trial court committed error in denying to Appellant the presentation of testimony by Joe Putnam and Vince Dolov. We disagree.
{¶ 60} The record indicates that not only did Appellant fail to comply with the State's request for discovery and motion to compel, but informed the court that he had no discovery. The request to use the witnesses was made on the second day of trial. The proffer by Appellant's counsel indicates that Mr. Dolov would explain the classrooms diagram which the court noted was drawn by Appellant's counsel and that Mr. Putnam would explain his classroom setting. (Tr. 223-225).
{¶ 61} We agree with the State that Criminal Rule 16(E)(3) is applicable.
{¶ 62} Crim. R. 16(E)(3), Regulation of Discovery, states:
{¶ 63} "Failure to comply. If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule or with an order issued pursuant to this rule, the court may order such party to permit the discovery or inspection, grant a continuance, or prohibit the party from introducing in evidence the material not disclosed, or it may make such other order as it deems just under the circumstances." State v. Wiles (1991), 59 Ohio St.3d 71,78, 571 N.E.2d 97, 110; State v. Parson (1983),6 Ohio St.3d 442, 445, 453 N.E.2d 689, 691; and State v. Edwards (1976),49 Ohio St.2d 31.
{¶ 64} We also find no abuse of discretion in the action the court took in its denial, particularly in that Appellant was asked and explained, with reference to the drawing, the location of the various classroom locations. The fact that a witness in an adjoining classroom heard nothing is not material. We find no prejudice to the Appellant in the exclusion of such witnesses.
{¶ 65} Appellant's Third Assignment of Error is denied.
 IV.
{¶ 66} The Fourth Assignment addresses the court's denial of Appellant's motion to include for appeal any taped statements of interviews of Mr. Dolov and Mr. Putnam. We disagree.
{¶ 67} Criminal Rule 16(B)(1)(f) and (g) and 16(B)(2) provide:
{¶ 68} "Disclosure of evidence favorable to defendant. Upon motion of the defendant before trial the court shall order the prosecuting attorney to disclose to counsel for the defendant all evidence, known or which may become known to the prosecuting attorney, favorable to the defendant and material either to guilt or punishment. The certification and the perpetuation provisions of subsection (B)(1)(e) apply to this subsection.
{¶ 69} "In camera inspection of witness' statement. Upon completion of a witness' direct examination at trial, the court on motion of the defendant shall conduct an in camera inspection of the witness' written or recorded statement with the defense attorney and prosecuting attorney present and participating, to determine the existence of inconsistencies, if any, between the testimony of such witness and the prior statement.
{¶ 70} "Information not subject to disclosure. Except as provided in subsections (B)(1)(a), (b), (d), (f), and (g), this rule does not authorize the discovery or inspection of reports, memoranda, or other internal documents made by the prosecuting attorney or his agents in connection with the investigation or prosecution of the case, or of statements made by witnesses or prospective witnesses to state agents."
{¶ 71} It is quite clear that, while the state is required to provide information favorable to a defendant on the issue of his guilt or innocence, Criminal Rule 16 abrogates providing statements of non-defendant witnesses until after direct examination. (Also, see, State v. Skudder [1994],71 Ohio St.3d 263.)
{¶ 72} Here, Appellant had the opportunity to present such persons as witnesses if he had complied with discovery, and knew the content of their proposed testimony as shown by proffer. Such proffer does not indicate testimony which could be classified as sufficiently material to be exculpatory requiring the State to divulge such to Appellant.
{¶ 73} Appellant's Fourth Assignment of Error is denied.
 V.
{¶ 74} The Fifth Assignment concerns assertions in restriction of cross-examination.
{¶ 75} On Page 69 of the transcript, (Vol. 1), Appellant attempted on cross-examination of Ashley Cappello to inquire as to statements made to the prosecutor. Had there been a statement given subject to inquiry, the appropriate place of inquiry under Crim. R. 16 would have been at the conclusion of the direct testimony. This was not done.
{¶ 76} On Page 95 and 96, Appellant developed the fact that Erica Sapp discussed the occurrence with Holly Adkins. He then, at Tr. 97, attempted to inquire as to further conversations with Katie Adkins and Sarah Shrigley. While the questions in and of themselves were not hearsay, the content would have been. We find no abuse of discretion in sustaining such objections.
{¶ 77} At page 198, Appellant attempted to inquire as to an Axis II diagnosis, which was not relevant to that made by Dr. Carolyn Schneiderman. As part of sustaining the objection, the court verified that Axis II was not part of the diagnosis. Appellant had been permitted to inquire extensively as to the actual diagnosis and ramifications in the prior cross-examination of Dr. Schneiderman. We find no abuse of discretion.
{¶ 78} Therefore, this Fifth Assignment is not well taken.
 VI.
{¶ 79} The Sixth Assignment raises the question of admission of hearsay without foundation to qualify it as corroborating evidence.
{¶ 80} The specific statements as to which Appellant objects are indicated on pages 74 and 131-138. Also, Appellant refers to page 129 as testimony which does not support the required corroboration, but no objection appears on page 129.
{¶ 81} The question on page 74 is one directed to Cynthia Donnelly, Assistant Prinicipal, as to what Holly Adkins stated to her as to the conduct of Appellant. This is clearly part of the required investigative process and would not under any circumstances establish the truth of such statements.
{¶ 82} As stated by the Ohio Supreme Court in State v. Thomas
(1980), 61 Ohio St.2d 223:
{¶ 83} "Extrajudicial statements by an out-of-court declarant are properly admissible to explain actions of witness to whom statement was directed.
{¶ 84} "Testimony of law enforcement officials that they had received information about a `sports bookmaking' operation `taking place in Roseville, Ohio' was admissible to explain the subsequent investigative activities of witnesses."
{¶ 85} Also, a similar holding was stated by this court inState v. Tanner (December 15, 2003), Fifth District App. No. CT2003-0005, as to statements made during investigation to a law enforcement officer:
{¶ 86} "Direct examination testimony of deputy sheriff describing statement provided to him by witness in burglary and theft investigation was not offered to prove truth of matter asserted, and was thus not hearsay, based upon witness's subsequent testimony that was essentially the same as that of deputy's; deputy relayed statement by witness that witness had seen an individual matching defendant's description near the scene of crime. Rules of Evid., Rule 801(C).
{¶ 87} The same rules relative to the investigative process cover the statements made by Holly Adkins to Deputy Eric Weisburn on pages 137-138.
{¶ 88} As to corroboration required by R.C. 2907.06(B), this is not part of our review as Appellant was found not guilty of the sexual imposition charge to which this section relates.
{¶ 89} The Sixth Assignment is therefore overruled.
 VII.
{¶ 90} The Seventh Assignment asserts error in allowing admission of testimony as to Appellant's character for truthfulness. The transcript text referenced occurs on pages 71, 72, 76 and 101.
{¶ 91} We find the Appellee is correct in that no objection was made as to Ashley Cappello's testimony that Holly Adkins was truthful and trustworthy and therefore any complaints as to such have been waived. Stores Realty Co. v. Cleveland (1975),41 Ohio St.2d 41, Atwood v. Leigh (1994), 98 Ohio App.3d 293.
{¶ 92} Evidence Rule 608(a)(2) states:
{¶ 93} "Evidence of truthful character is admissible only after the character of the witness for truthfulness has been attacked by opinion or reputation evidence or otherwise."
{¶ 94} During cross-examination of Holly Adkins, Appellant attempted to attack the veracity of her direct testimony by inquiring as to prior inconsistent statements he had given.
{¶ 95} In Beard v. Mitchell (1979), 604 F.2d 485, the court held:
{¶ 96} "Permitting assistant United States attorney assigned to investigation to testify at trial that FBI agent, who was being sued for alleged reckless conduct of investigation, had reputation for truthfulness was not abuse of discretion where plaintiff had introduced prior inconsistent statements by agent as means of attacking his credibility. Fed. Rules Evid. Rules 608(a)(2), 608 Note, 28 U.S.C.A."
{¶ 97} While such ruling is premised on Federal Rules of Evidence, Ohio Rule 608 is substantially similar and the technical differences would not alter the conclusion.
{¶ 98} We therefore reject the Seventh Assignment of Error.
 VIII.
{¶ 99} Manifest weight of the evidence is questioned in the Eighth Assignment.
{¶ 100} In reviewing the records to the manifest weight of the evidence, or a reviewing court is to examine the entire record, weigh the evidence and draw all reasonable inferences, consider the credibility of the witnesses and determine "whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed." State v. Martin (1983),20 Ohio App. 172. See, also, State v. Tompkins (1997),78 Ohio St.3d 380. The discretionary power to grant a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Martin at 175. Because the trier of fact is in a better position to observe the witnesses' demeanor and weigh their credibility, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact. State v. Demas (1967),10 Ohio St.2d 230, syllabus 1.
{¶ 101} Based upon the facts noted supra, and the entire record, we do not find the verdict was against the manifest weight of the evidence. The jury was free to accept or reject any or all of the testimony of the witnesses and assess the credibility of those witnesses. There was sufficient, competent evidence to support the jury's finding.
{¶ 102} The Eighth Assignment is rejected.
{¶ 103} Therefore, the case is affirmed at Appellant's costs.
Boggins, J., Wise, P.J. and Edwards, J. concur.
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Court of Common Pleas of Stark County, Ohio, is affirmed. Costs assessed to Appellant.